Kerry VEAL, et al.,
Plaintiffs–Appellants,

v.

FIRST AMERICAN SAVINGS BANK, et al., Defendants–Appellees.

Paul GRAHAM, et al.,
Plaintiffs–Appellants,

v.

SECURITY SAVINGS AND LOAN ASSOCIATION, et al.,
Defendants–Appellees.

Nos. 89–1895 and 89–1919.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1990.

Decided Sept. 27, 1990.

Rehearing and Rehearing En Banc Denied Nov. 5, 1990.

---

Ivan E. Bodensteiner, Linda D. Moskowitz, Seymour H. Moskowitz, Valparaiso, Ind., for plaintiffs-appellants.

James L. Turner, David O. Tittle, Donald J. Graham, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., Paul A. Rake, Sherry L. Clarke, Eichhorn, Eichhorn & Link, Hammond, Ind., for First American Savings Bank.

Henry S. Weinstock, Nossaman, Guthner, Knox & Elliott, Los Angeles, Ca., for California Student Loan Finance Corp.

Richard M. Malad, Cohen & Malad, Indianapolis, Ind., for Western Loan Marketing Assn.

Mark E. Shure, Bruce H. Schoumacher, Kevin T. Keating, McDermott, Will & Emery, Chicago, Ill., Lambert C. Genetos, Burke, Murphy, Costanza & Cuppy, Merrillville, Ind., for Higher Educ. Assistance Foundation.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Hammond, Ind., Theodore R. Carter, III, Dept. of Justice, Civ. Div., Washington, D.C., for Dept. of Educ.

James L. Turner, Lloyd T. Wilson, Jr., Donald J. Graham, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., Mark S. Lucas, Merrillville, Ind., for Security Sav. and Loan.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and WILL, Senior District Judge.[1]

BAUER, Chief Judge.

The appellants (plaintiffs below), former students at the Gary, Indiana, branch of the Adelphi Business College ("Adelphi") ("the students"), seek rescission of their

1. The Honorable Hubert L. Will, Senior Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

guaranteed student loans,[2] reinstatement of their eligibility for Pell Grants, and damages. The appellees (defendants below) are First American Savings Bank and Security Savings and Loan Association (the "Lenders"), which issued their student loans, the Higher Education Assistance Foundation ("HEAF"), which guaranteed the loans, the United States Department of Education ("DOE"), which reinsured the loans, the California Student Loan Finance Corporation ("CSLFC") and the Western Loan Marketing Association ("WLMA") (collectively referred to as "the defendants"), which subsequently bought some of the loans in the secondary market. The gravamen of the students' complaint is that Adelphi fraudulently induced them to enroll at the school, made arrangements for them to obtain guaranteed student loans through the defendant Lenders, and then failed to provide them with an education. The students, however, do not name Adelphi as a defendant in their complaint. (Adelphi filed for bankruptcy prior to the commencement of this lawsuit.) Rather, they allege that because of the "close connection" between Adelphi and the Lenders, the defendants stand in the position of Adelphi. The students' complaint therefore charges the defendants with numerous violations of state law and violations of the Higher Education Act of 1965 (the "HEA"), 20 U.S.C. §§ 1070 *et seq.* The district court was unimpressed by the students' "close connection" argument and granted the defendants' motion to dismiss for failure to state a claim. 125 F.R.D. 687. The district court also found that remedies under the HEA were limited to those enumerated in the statute and that the HEA preempted the students' state law remedies. We agree that the students have failed to state a claim for relief against the defendants, and therefore affirm on this ground alone.

## I.

According to the allegations in the students' complaint, Adelphi Business College was a blight on the educational system. It preyed on the jobless and uneducated, luring them into what should have been the hallowed halls of an educational institution with promises of skills and jobs. Adelphi, however, had no intention of honoring these promises because Adelphi was in the education business only to make a quick buck and beat a hasty retreat.

The students contend that Adelphi ordered its troops of public relations representatives into the streets of Gary to recruit candidates for enrollment. The scope of the search was constrained only by Adelphi's preference that the candidates have a verifiable permanent address, a phone number, and no job. Paul Graham was approached on the streets of Gary by an Adelphi recruiter who promised the availability of "high technology" job opportunities upon graduation. Shortly thereafter, Graham applied at Adelphi, took a ten-minute "entrance examination," and signed a promissory note for $2,500. He also applied for a Pell grant. A couple of weeks later, Graham began a "bookkeeping" course. Upon completion, he attempted to enroll in a computer course only to discover that Adelphi, despite its promises of "high technology training," had neither a computer course nor a computer. Graham never received a diploma nor a certificate for the coursework he completed, nor was he provided with any job placement assistance prior to July 24, 1987, when Adelphi closed its doors.

Hattie Carter was stopped on the street by an Adelphi recruiter who inquired whether she was looking for a job. When Carter answered in the affirmative, the recruiter took her phone number. Another recruiter called a couple of days later and asked Carter to come to Adelphi. The next day, Carter went to Adelphi, took a ten-minute "exam," signed a promissory note and enrolled in a "bookkeeping" course. She was unable to complete the course before Adelphi ceased operations. Carter thereafter was informed by Mitchell Sweet & Associates, which serviced the loan for

---

**2.** The students received loans guaranteed by private and state agencies, rather than loans guaranteed by the federal government under the Federal Insured Student Loan Program or the Federal PLUS Program. *See generally,* 34 C.F.R. § 682 *et seq.* (1989).

CSLFC, that she would have to begin repaying her loan immediately because she was no longer enrolled in school.

Kerry Veal received a phone call at home from an Adelphi recruiter who told him that Adelphi could help him find a job. Veal went to Adelphi, where he was told that a loan had been arranged for him and that he did not need to worry about money. Veal took an "exam," signed a promissory note and enrolled in a "bookkeeping" course. Veal was informed by the financial aid office of Adelphi that after paying for his books and tuition he was entitled to a refund of $1,233 from the proceeds of his guaranteed student loan and Pell grant. Veal never received his refund and, like the other students, was unable to complete his coursework before Adelphi closed. He also received letters from Mitchell Sweet & Associates demanding repayment of his loans.

And so the story goes. The allegations of the other students are variations on the above theme. After the several financial institutions that held their student loans began demanding payment, the students filed suit against the institutions, seeking a declaration that their loans were void and therefore unenforceable. Although Kerry Veal, Hattie Carter and Othella Bolton ("the Veal plaintiffs") name First American Savings Bank as the defendant Lender, and Paul Graham and Estella Sanders ("the Graham plaintiffs") (both groups collectively referred to as "the students") name Security Savings and Loan as the defendant Lender, both complaints charge the same violations of state and federal law—only the factual allegations with respect to each student are different. Count 1 of both complaints charges that Adelphi breached its agreement to provide vocational training and placement services to the students. Count 2 charges that Adelphi made fraudulent, material misstatements to the students in order to induce them to enroll at Adelphi and that the students then enrolled as a result of these misleading statements. In Count 3, the students allege that Adelphi breached its duty of care by negligently

failing to take reasonable measures to ensure the truthfulness and accuracy of the statements, representations, and information provided to the students by Adelphi. In Count 4, the students allege that Adelphi and the Lenders violated the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.* Count 5 charges that Adelphi breached its fiduciary duty to the students and Count 6 charges that Adelphi and the Lenders violated the Indiana Deceptive Practices Act, I.C. 24–5–0.5–1 *et seq.*

In response to the students' complaints, the defendants filed a motion to dismiss, arguing that federal law preempted state law in this area, that the HEA did not contemplate a private right of action, and that, in any event, the students failed to allege any wrongdoing on the part of any of the named defendants. The district court agreed with all three of these contentions and granted the motion to dismiss.

The students appealed. They disagree with the district court's disposition of the preemption and private right of action issues. They also contend that the factual allegations against Adelphi are legally sufficient against the defendants. Plaintiffs claim that, because of the "close connection" between Adelphi and the Lenders, an "origination relationship" existed between Adelphi and the Lenders, thereby subjecting the defendants to their defenses against Adelphi, 34 C.F.R. §§ 682.512(d)(1) and 682.512(e); second, that the Federal Trade Commission ("the FTC") regulation on the preservation of consumer defenses applies to the defendants, 16 C.F.R. § 433.2(a); and third, that under Ind.Code Ann. § 26–1–3–306 (Burns 1986), the defendants are subject to all their defenses against Adelphi.[3]

## II.

■ Dismissal for failure to state a claim is proper if it appears that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.

---

**3.** In addition, the plaintiffs also contend that the district court erred by denying their motion for class certification pursuant to Fed.R.Civ.P. 23.

Because we affirm the district court's order dismissing plaintiffs' complaints for failure to state a claim, it is unnecessary to reach this issue.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In order to prevail upon a motion to dismiss, the defendant must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence. *Gomez v. Illinois State Bd. of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). For purposes of reviewing the district court's dismissal for failure to state a claim, this court accepts all of the allegations contained in the underlying complaint as true. *Id.* However, when the defendant is charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud. Fed.R. Civ.P. 9(b). The plaintiff must identify particular statements and actions and specify why they are fraudulent. *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir. 1987). Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal. *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985).

The students primarily seek relief based upon allegedly fraudulent activity. Count 2 of both complaints specifically charges fraud. Although Count 6 charges violations of the Indiana Deceptive Practices Act and Count 4 asserts a private right of action under the HEA, the facts alleged in support of both counts would constitute fraud by Adelphi if proven. Similarly, Counts 3 and 5, although charging a breach of fiduciary duty and negligence, are again based upon the allegedly fraudulent actions of Adelphi. None of the factual allegations in the complaint charge any of the defendants with *any* wrongful conduct, let alone any specific instances of wrongful conduct, thus failing to meet the particularity requirement of Rule 9(b).

■ Despite the lack of allegations against the defendants, the students press the above claims on the theory that the allegations against Adelphi can be imputed to the defendants because of the "close connection" between Adelphi and the defendants.[4] First, the students argue that this "close connection" amounts to an "origination relationship."[5] The students contend that, when an origination relationship exists between a school and a lender, a school's failure to render educational services is a defense to repayment of the loan to the lender. To a limited extent, the students are correct. In cases involving Federal Insured Student Loans ("FISL") and Federal PLUS loans, in which the federal government rather than a private or state guaranty agency directly enters into a guaranty agreement with the lender, *see generally* 34 C.F.R. § 682 *et seq.* (1989), the lender's ability to recoup from the federal government the full amount of the loan upon which the borrower has defaulted may be limited. For example, when a claim is filed by a school for a loan made by the school (or originated by the school, *see* 34 C.F.R. § 682.512(e)), the Secretary deducts from the claim—

**4.** To support the allegation of a "close connection", the Veal plaintiffs charge:

Adelphi selected First American Savings as the lender, used First American Savings' loan forms, and prearranged the loans for the students. Adelphi maintained and utilized preapproved promissory notes, usually preprinted with the name of First American Savings, and represented to the plaintiffs that all financial arrangements necessary to loan approval had been prearranged with First American Savings. In short, Adelphi dealt directly with the students and assumed responsibility to get all necessary forms to the lenders. First American Savings repeatedly and regularly made loans to finance the 'educational services' the plaintiffs anticipated receiving from Adelphi.

The Graham plaintiffs make the identical allegations, except that they name Security Savings and Loan as the lender.

**5.** An origination relationship is defined as:

A special relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by lenders before making loans. In this situation, the school is considered to have "originated" a loan made by the lender. The Secretary determines that "origination" exists if, for example—

(1) A school determines who will receive a loan and the amount of the loan; or

(2) The lender has the school verify the identity of the borrower or complete forms normally completed by the lender.

34 C.F.R. § 682.200 (1989).

(i) An amount equal to any unpaid refund that the school owes the student to whom or on whose behalf the loan was made under § 682.606; or

(ii) An amount which bears the same ratio to the total amount of the claim as the amount of educational services that the student was unable to complete, because the school terminated its teaching activities during the period for which the loan was obtained, bears to the total educational services which the student would have received, during the period for which the loan was obtained, had the school not terminated its teaching activity.

34 C.F.R. § 682.512(d)(1).[6] Furthermore, in deciding whether to approve any claim, regardless of the nature of the entity filing the claim, the Secretary:

(1) ... considers matters affecting the enforceability of the loan obligation, and whether the loan was made and administered in accordance with the Act and applicable regulations[;] [and]

(2) ... deducts from a claim any amount that is not a legally enforceable obligation of the borrower, except to the extent that the defense of infancy applies.

34 C.F.R. § 682.513(a).

As much as the students would like to take refuge in these regulations, they cannot; they did not borrow under the FISL or Federal PLUS programs. *Cf. United States v. Griffin,* 707 F.2d 1477 (D.C.Cir. 1983). They hold loans guaranteed by private or state agencies that are not subject to the protections of the above regulations. *See* 34 C.F.R. § 682.103. *See also* 41 Fed. Reg. 4496 (1976). These protections inapplicable, the students offer no alternative support for this first argument, which must fail.

■ Next, the students claim that the lenders are subject to the FTC rule on the preservation of consumer defenses, which requires that consumer credit contracts include a provision advising holders of such contracts that they are subject to all claims and defenses that the debtor has against the seller of goods and services. *See* 16 C.F.R. § 433.2. Again, the students are partially correct. In 1976, the Secretary of the DOE interpreted the FTC rule to apply to schools such as Adelphi. O.E. Bulletin L16 (1976). Since that time, however, loans made, issued or guaranteed under the HEA have been exempted from the FTC rule on preservation of consumer defenses. *See* 15 U.S.C. § 1603(6) (1982); 16 C.F.R. § 226.3(f). The students again seek refuge in an inapplicable rule; thus, their argument fails.

■ Last, the students cite Ind.Code Ann. § 26-1-3-306 (Burns 1986) for the *proposition that the "close connection" be*tween Adelphi and the Lenders subjects the defendants to their defenses against Adelphi as a matter of law. Section 26-1-3-306, however, simply restates the familiar rule that an assignee who is not a holder in due course takes an instrument subject to defenses against the assignor existing at the time of assignment. This argument, too, is fruitless: there is no dispute that Adelphi was never a "holder" of the students' notes and that the defendants were never assignees of Adelphi.

## III.

The arguments that the students have advanced to bind the actions of Adelphi to the defendants are unpersuasive. Because the students have failed to allege a connection between the fraudulent activity of Adelphi and the defendants, the district court correctly granted the defendants' motion to dismiss for failure to state a claim. *Scruggs v. Moellering,* 870 F.2d 376, 378 (7th Cir.1989).[7]

---

6. Section 682.512(d)(1) also applies to a claim filed by an entity other than a school which has acquired a loan made by a school through assignment. 34 C.F.R. § 512(d)(2). FISL and Federal PLUS loans are not negotiable instruments and subsequent holders of these loans are not holders in due course. 34 C.F.R. § 682.508(c).

7. *Although the students are without recourse in this court, they are not without any remedy.* Approximately one month after the district court issued its opinion, the DOE issued its

The decision of the district court is
AFFIRMED.

"Compromise and Write–Off Procedures." Under Part IV of those procedures, guaranty agencies like the HEAF are authorized to forgive that portion of a loan that bears the same ratio to the total amount of the loan as the amount of educational services that the borrower was unable to complete, thus affording some relief to people like the students. The students also have recourse against Adelphi in the bankruptcy court—if that constitutes any comfort. Further, the students are entitled to credit for any portion of their loans that the Lenders did not actually pay to Adelphi, if there are such. Finally, if sued by a Lender in state court for collection of one of these loans, each of these plaintiff students would be entitled to assert any defenses available under state law that are applicable to his or her particular loan.