Grace **KEAMS**; Jolene Cordero; Pandora Lee; Bunny McCorkey, Individually and on Behalf of All Others Similarly Situated, Plaintiffs–Appellants,

v.

**TEMPE TECHNICAL INSTITUTE, INC., Defendant,**

**and**

Accrediting Bureau of Health Education Schools/Program, (ABHES); National Association of Trade and Technical Schools, (NATTS), Defendants–Appellees.

No. 92–16349.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1993.

Decided Oct. 31, 1994.

Bruce A. Burke (argued), O'Dowd, Burke & Lundquist, Tucson, AZ, and Judy Flanagan (on the briefs), Urban Indian Law Office, Phoenix, AZ, for plaintiffs-appellants.

Paul G. Johnson (argued), and David C. Tierney (on the briefs), Sacks, Tierney & Kasen, Phoenix, AZ, for defendant-appellee Accrediting Bureau of Health Educ. Schools.

Mark L. Pelesh (argued), Cohn & Marks, Washington, DC and David L. White (on the briefs), Jennings, Strouss & Salmon, Phoenix, AZ, for defendant-appellee Nat. Ass'n of Trade and Technical Schools.

Before: POOLE, BEEZER and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case poses one question. Does the Higher Education Act, 20 U.S.C. § 1001 *et seq.*, preempt state tort claims by students against school accrediting associations? We conclude that it does not.

## I. Facts

The action was dismissed in district court for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court did not reach the question of whether under state law a claim might exist. The theory of the dismissal was that, whether there would otherwise be a state tort claim or not, the federal Higher Education Act preempted any such state remedies. *Keams v. Tempe Technical Institute, Inc.*, 807 F.Supp. 569, 578 (D.Ariz.1992).

Although both sides submitted additional materials or referred to materials outside the pleadings, the district court elected not to convert the motion into one for summary judgment, and resolved it entirely on the basis of whether the claim stated by the complaint was preempted. *Id.* at 572. A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law and is reviewed *de novo*. *Everest and Jennings v. American*

*Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994). All allegations of material fact must be taken as true and be construed in the light most favorable to the nonmoving party. *Id.*

Tempe Technical Institute, Inc., according to the complaint, operated for about one year and seven months. It offered courses in medical technology, other health related fields, and architectural drafting. Both Accrediting Bureau of Health Education Schools/Programs and the National Institute of Trade and Technical Schools accredited the school. The complaint alleges, and we take as true for these purposes, that accreditation was granted despite the school's failure to meet the accreditors' written, published criteria.

Grace Keams and the other plaintiffs borrowed money to pay their tuition and expenses. They aver that they did so because of the school's accreditation as well as representations made to them about the education they would get, the job prospects they would enjoy after getting it, and the benefits they could obtain to support themselves while they were in school. They could not have obtained the loans if the school had not been accredited. They could not have enrolled in the school without the loans. The school went out of business, and the students "were left without skills, without jobs, and with thousands of dollars in student loans to repay."

The students sued the owners of the school, the banks and holders of their notes, and others, on numerous theories. The only defendants involved in this appeal, certified under Federal Rule of Civil Procedure 54(b), are the two accrediting agencies. The complaint stated two theories against the accreditors, negligence and violation of the Higher Education Act. The district court concluded that the Higher Education Act did not imply a private right of action in the students, *Keams*, 807 F.Supp. at 580, but we do not review that determination, because it has not been appealed. The only issue on appeal is the dismissal, because of preemption, of the common law negligence claim. The theory of the claim is that the accreditors negligently

accredited and failed to monitor the school, causing the damages to Keams and the other students.

## II. Analysis

The theory of the dismissal was preemption. We have found no decision by this or any other circuit directly in point. The closest authority we have found relates to lenders and guarantors, where courts have in several contexts concluded that the Higher Education Act does not preempt all state law.[1]

To decide whether the Higher Education Act preempts state tort suits against accreditors, we read the Act. "[O]ur sole task is to ascertain the intent of Congress." *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). If Congress said expressly that such suits are preempted, that is the end of the matter. If it did not, we may nevertheless infer preemption. We draw such an inference if Congress intended to occupy the entire field, leaving no room for the operation of state law. Even if that is not so, we infer preemption of state law if compliance with both state and federal law would be impossible, or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California v. ARC America Corp.,* 490 U.S. 93, 100–01, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). There is a "presumption against finding pre-emption of state law in areas traditionally regulated by the States." *Id.* at 101, 109 S.Ct. at 1665; *see Cipollone v. Liggett Group, Inc.,* — U.S. —, —, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

The Higher Education Act does not expressly preempt state common law tort claims against accreditors. Worse, for the accreditors' argument, there *is* express preemption of state law in a number of areas.

*See* 20 U.S.C. § 1099 (loans not subject to state disclosure requirements); 20 U.S.C. § 1078(d) (state usury laws inapplicable); 20 U.S.C. § 1091a(a) (state statutes of limitations inapplicable); 20 U.S.C. § 1091a(b) (state infancy defenses unavailable).

These express provisions for preemption of some state laws imply that Congress intentionally did not preempt state law generally, or in respects other than those it addressed. "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation." *Cipollone,* — U.S. at —, 112 S.Ct. at 2618 (internal citations and quotation marks omitted). This applies the familiar principle of statutory construction, *expressio unius est exclusio alterius. Id.* This is not a rule of law, but one of interpretation, based on how language is ordinarily used. *Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1313 (9th Cir.1992). It does not necessarily end the inquiry. Nevertheless, the Congressional narrowness and precision in preempting some state laws cuts against an inference of a Congressional intention to preempt laws with a broad brush, and without express reference.

Even in the absence of an express statement, we would find implied preemption if Congress intended to occupy the entire field, leaving no room for the operation of state law. *ARC America Corp.,* 490 U.S. at 100–01, 109 S.Ct. at 1664–65. That implication cannot be reconciled with the narrow and precise preemptions expressed. It is apparent from the language of the express preemption clauses that Congress expected state law to operate in much of the field in

---

1. *E.g., Jackson v. Culinary School of Washington, Ltd.,* 27 F.3d 573 (D.C.Cir.1994); *Armstrong v. Accrediting Council for Continuing Education & Training, Inc.,* 832 F.Supp. 419 (D.D.C.1993); *Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1244–45 (D.D.C.1992); *Tipton v. Secretary of Educ.,* 768 F.Supp. 540, 563 (S.D.W.Va.1991). *But see Graham v. Security Savings & Loan,* 125 F.R.D. 687, 692–93 (N.D.Ind.1989) (finding that the detailed federal system of rules surrounding default on guaranteed loans preempted state law claims for recision of such loans), *aff'd* on other grounds *sub nom., Veal v. First Am. Savings Bank,* 914 F.2d 909 (7th Cir.1990).

which it was legislating. Thus, there can be no inference that Congress " 'left no room' for supplementary state regulation." *Guerra*, 479 U.S. at 280–81, 107 S.Ct. at 689. The Higher Education Act has not been read, in other contexts, as occupying the field and leaving no room for state law to operate. *See Jackson v. Culinary School of Washington, Ltd.*, 27 F.3d 573, 580–81 (D.C.Cir.1994); *Tipton v. Secretary of Educ.*, 768 F.Supp. 540, 553–54 (S.D.W.Va.1991). The mere existence of a detailed regulatory scheme does not by itself imply preemption of state remedies. *English v. General Elec. Co.*, 496 U.S. 72, 87, 110 S.Ct. 2270, 2279–80, 110 L.Ed.2d 65 (1990).

We would also imply preemption if "compliance with both state and federal law [would be] impossible." *California v. ARC America Corp.*, 490 U.S. at 100, 109 S.Ct. at 1664–65. But the accreditors have not made any argument to that effect.

All that leaves is implied preemption if state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress...." *Id.* at 101, 109 S.Ct. at 1665. The district court concluded that it did:

> Furthermore, the court agrees with the accreditor defendants that permitting state claims against accrediting agencies that comply with the Act and its regulations would frustrate the structure of the guaranteed student loan program. Negligence tort law varies from state to state. Allowing state negligence claims could result in numerous and unpredictable standards for performance. Such confusion and lack of direction regarding compliance could well discourage participation by accrediting agencies in the program.

*Keams*, 807 F.Supp. at 578. We are unable to agree with this proposition.

▆▆▆▆ Part of the argument of the accreditors, accepted by the district court, is that the state law should not receive the usual presumption against preemption. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618, because "negligence claims regarding the accreditation of a school for participation in a federal program are not in an area traditionally regulated by the states." *Keams*, 807

F.Supp. at 573. This cuts too fine. By this principle, the presumption against preemption would never operate, because state law would never have traditionally regulated activities respecting the previously nonexistent federal law. Negligence tort claims are traditionally regulated by state law. *Cf. Cipollone*, —— U.S. at ——, ——, 112 S.Ct. at 2618–19; *West v. Northwest Airlines, Inc.*, 923 F.2d 657, 659 (9th Cir.1990); *Taylor v. General Motors Corp.*, 875 F.2d 816, 823 (11th Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). State legal systems have for a very long time delineated whether a cause of action for negligence or negligent misrepresentation lies, for certifications foreseeably affecting third party reliance. *Cf. Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 275–76 (1922) (Cardozo, J.); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931) (Cardozo, J.); Prosser and Keeton on Torts 747 (5th ed. 1984). The kind of claim the students assert is of a type ordinarily and traditionally regulated by state tort law.

The district court adopted a plausible policy argument that state standards might be diverse, and might discourage accreditor participation in the federal program. But an equally plausible policy argument could be made to the contrary, that diversity in accrediting standards might facilitate adaptation of this federal program to local conditions. Congress could have avoided diversity by express preemption, had it wished to do so, yet it did not.

The statute conditions loan eligibility of vocational schools on accreditation by "a nationally recognized accrediting agency or association listed by the Secretary." 20 U.S.C. § 1085(c)(4). The Secretary has promulgated regulations for listing and removing from her list accrediting agencies. 34 C.F.R. §§ 602.1–602.19. These standards generally describe the experience, purposes, and processes which the Secretary will evaluate in determining whether to place an accrediting agency on the approved list. Keams' brief argues that these regulations "are not standards as to how the agency should accredit a school, but criteria as to whether an accrediting agency should be recognized by the agency." That is correct. If an accrediting agen-

cy does not meet the criteria, the Secretary can refuse to list it, but the agency can go on accrediting schools.

Assuming for purposes of discussion that Arizona law allows a tort claim for negligent accreditation, it is as plausible that the private litigation would assist the Secretary in carrying out the purposes of the statute, as that the tort claim would present " 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *ARC of America Corp.*, 490 U.S. at 100–01, 109 S.Ct. at 1664–65 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). It cannot be easy for the Secretary to police her list of accrediting agencies. The schools which are accredited have an interest in speaking well of the accreditors, and the accreditors will doubtless speak well of themselves. The schools which are not accredited suffer from the disadvantage, if they attack the accreditors, that they lack the prestige of accreditation, and their interest may be in softening accreditation standards rather than making them more stringent. The students have no natural forum in the federal procedure. Their interest in honest and effective accreditation may be more effectively vindicated by private tort suits in state court. The Secretary might find those lawsuits useful as a device to stimulate examination of particular accrediting agencies. We do not make this policy decision. It is for the state governments to decide upon the desirability of the tort, unless Congress chooses to preempt their lawmaking power.

The accreditors have not demonstrated that preemption of these claims was the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The students' claims could not properly be dismissed on the ground that they were preempted.

REVERSED and REMANDED.