Barbara MORGAN, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

MARKERDOWNE CORPORATION, Computer Learning Center, Valerie Dorras, Graeme Dorras, Chemical Bank, Citibank (New York State), Doe Banks One, Two, Three and Four, New Jersey Higher Education Assistance Authority, Defendants.

and

CITIBANK (New York State),
Third Party Plaintiff,

v.

ILLINOIS STUDENT ASSISTANCE COMMISSION, American Student Assistance, United Student Aid Funds and XYZ Co., John Doe Corp. (being fictitious entities) and Richard W. Riley, Secretary of the Department of Education, Third Party Defendants,

NEW JERSEY HIGHER EDUCATION
ASSISTANCE AUTHORITY

v.

Barbara MORGAN.

Civ. No. 96–1910(DRD).

United States District Court,
D. New Jersey.

Sept. 5, 1997.

Madeline L. Houston, Melissa J. Totaro, Paterson, NJ, for Plaintiff.

David L. Menzel, Cuyler Burk, Parsippany, NJ, for Defendant Citibank.

Ronald J. Shaffer, Frank G. Murphy, Fox, Rothschild, O'Brien & Frankel, NJ, for Defendants United Student Aid Funds, Inc. and Illinois Student Assistance Commission.

Frank W. Hunger, Assistant Attorney General, Faith S. Hochberg, United States Attorney, J. Christopher Kohn, Robert M. Hollis, John G. Interrante, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant Secretary of United States Department of Education.

Marguerite M. Schaffer, Shain, Schaffer & Rafanello, Bernardsville, NJ, for Defendant Chemical Bank.

Scott G. Sproviero, Sinisi, Van Dam & Sproviero, NJ, for Defendants Markerdowne Corporation, Computer Learning Center, Valerie Doras and Graeme Doras.

Mark E. Shure, Kevin T. Keating, Keating & Shure, Ltd., Chicago, IL, for Defendant American Student Assistance.

David Powers, Deputy Attorney General, Department of Law & Public Safety, Richard J. Hughes, Trenton, NJ, for Defendant New Jersey Higher Education Assistance Authority.

Philip Elberg, Medvin & Elberg, NJ, Michael Tankersley, Washington, DC, for Public Citizen Litigation Group, Amicus Curiae.

DEBEVOISE, Senior District Judge.

Plaintiff, Barbara Morgan, instituted this class action against defendants Computer Learning Center and two of its principals, Markerdowne Corporation, Chemical Bank, Citibank, certain state and private Guaranty Agencies [1] and the Secretary of the United States Department of Education.

---

1. A guaranty agency is any state or non-private institution or organization with which the Secretary has a reinsurance agreement. *See* 20 U.S.C. §§ 1085(j), 1078(b). Those guaranty agencies named as defendants in the Second Amended Complaint are: New Jersey Higher Education

Plaintiff's claims are set forth in a Second Amended Complaint to which there is attached and incorporated by reference an Amended Complaint. The two documents will be referred to herein as the "Complaint."

The Complaint alleges that Computer Learning Center ("CLC") and its two principals, Valerie Dorras and Graeme Dorras, induced plaintiff through false representations to enroll in CLC's computer training program and to take out a Guaranteed Student Loan and a Federal Supplemental Loan to finance her attendance. CLC dealt with plaintiff concerning the loans and provided all the paper work which it transmitted to Chemical Bank ("Chemical"). Chemical extended the loans. The New Jersey Higher Education Assistance Authority ("NJHEAA") guaranteed both loans. It is alleged that both Chemical and NJHEAA were aware that of the 1,460 loans which Chemical extended to CLC students, 38% were in default, and as a result Chemical and NJHEAA had constructive and/or actual notice that CLC and its agents were engaged in fraudulent and/or unconscionable practices.

The Complaint alleges that the other defendant banks and guarantor agencies, including Illinois Student Assistance Commission ("ISAC"), American Student Assistance ("ASA") and United Student Aid Funds ("USAF"), made loans and extended guarantees under similar circumstances and thus had similar notice of the alleged fraudulent and/or unconscionable activities.

The Complaint alleges that the lending banks and the guarantor agencies by continuing to lend to CLC students or by continuing to guaranty such loans furthered the fraudulent and unconscionable practices engaged in by CLC and its agents and are subject to all claims which student borrowers have against CLC, Markerdowne Corp. and their agents. This liability is predicated upon: 1) the Federal Trade Commission ("FTC") "Holder Rule," 16 C.F.R. § 433, 2) the fact that the loans were "originated" within the meaning of 34 C.F.R. § 682.200; 3) the fact that the notes were non-negotiable instruments and 4) New Jersey's common law of agency and pertaining to "close connections."

The Complaint alleges that pursuant to the Higher Education Act, 20 U.S.C. § 1082, the Secretary of the United States Department of Education (the "Secretary") had the duty and authority to oversee the loan program involved in the case. By virtue of this duty and authority the Secretary had actual and/or constructive notice that CLC and its agents engaged in fraudulent and/or unconscionable practices, and therefore, like the lending agencies and guarantors is subject to all claims plaintiff has against CLC, Markerdowne Corp., and their agents.

Count One charges that CLC, Valerie Dorras and Graeme Dorras made false representations to prospective students to induce them to enroll in the CLC program. She seeks relief on behalf of herself and others similarly situated against CLC, Valerie and Graeme Dorras, Chemical and Citibank consisting of treble damages and attorneys' fees pursuant to N.J.S.A. 56:8–19 and against NJHEAA declaring that no further payments are due and owing on any loan in issue.

Count Two repeats the fraud charges contained in Count One and seeks actual and punitive damages against CLC and Valerie Dorras and Graeme Dorras, actual damages against Chemical and Citibank and against NJHEAA a declaration that no further payments are due and owing on any loan in issue.

Count Three in addition to repeating the prior allegations of the Complaint charges that the price charged by CLC under its contract with plaintiff and class members was unconscionably high within the meaning of N.J.S.A. 56:8–19. Plaintiff seeks against CLC, Valerie and Graeme Dorras, Chemical and Citibank treble damages and attorney's fees pursuant to N.J.S.A. 56:8–19 and against NJHEAA declaratory relief.

Count Four realleges the fraud allegations made against CLC and Valerie Dorras and

Assistance Authority, American Student Assistance, United States Aid Funds, and Illinois Student Assistance Commission.

Graeme Dorras in Count One and seeks against the guarantor defendants treble damages and attorneys' fees pursuant to N.J.S.A. 56:8–19, and to the extent that such entities enjoy sovereign immunity, a declaration that no further payments are due and owing on the student loans in issue. Similar declaratory relief is sought against the Secretary.

In Count Five, the Complaint realleges the misrepresentation and fraud allegations made against CLC and Valerie and Graeme Dorras in Count Two and seeks against the guarantor defendants actual damages and as against the Secretary declaratory relief as set forth above.

In Count Six, the Complaint realleges the allegations of Count Three, that the price charged by CLC under its contracts with students was unreasonably high, and sought against the guarantor defendants treble damages and attorneys' fees pursuant to N.J.S.A. 56:8–19. As against the Secretary, Count Six seeks the declaratory relief referred to above.

Defendants Chemical, Citibank, ASA, USAF and ISAC move to dismiss the Complaint for failure to state a cause of action, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56.[2] For the reasons set forth below, the defendants' motions will be granted in part and denied in part.

### PROCEDURAL HISTORY

NJHEAA filed an action on March 15, 1993 in the Superior Court of New Jersey against plaintiff to collect on a student loan. Plaintiff filed an answer *pro se* on April 6, 1993.

On June 30, 1993, a complaint was filed in the Superior Court on plaintiff's behalf against the school, CLC, the principals of the school, and Chemical, the bank that provided her student loans.

After conducting limited discovery, plaintiff moved to amend her Complaint to add as defendants Citibank and several "John Doe" banks, which also provided guaranteed student loans to students who attended CLC.

Further, plaintiff sought to certify as a class all persons who attended CLC during the six and one half years preceding the filing of the amended Complaint.

On February 1, 1996, the court conditionally certified a class consisting of "all persons who graduated from defendant Computer Learning Center on March 30, 1995 or within six and one half years prior to said date, or who otherwise stopped attending or withdrew from defendant Computer Learning Center on March 30, 1995 or within six years prior thereto." Defendants Chemical, Citibank, CLC and NJHEAA sought leave from the Appellate Division to appeal the order. The Appellate Division denied all applications.

Citibank filed a Third Party Complaint in the state court against guarantor agencies ASA, USAF, ISAC and the Secretary. On April 22, 1996, plaintiff filed a Second Amended Complaint naming the third party defendants as direct defendants.

The Secretary removed this action to this court. All third party claims and cross claims were stayed pending determination of motions to dismiss plaintiff's Second Amended Complaint.

The Secretary's motion was granted and the Complaint as to him was dismissed. This opinion disposes of the remaining motions.

### SPECIFIC ALLEGATIONS OF THE COMPLAINT

In the fall of 1990, plaintiff, an unemployed mother of three children, executed an enrollment contract to attend CLC, a post-secondary vocational school located in Paramus, New Jersey. She claims that she, and every other student who attended CLC from approximately September 1988 to March 1996, were defrauded by agents and representatives of CLC into enrolling at the school. Plaintiff contends that CLC misrepresented the benefits of a CLC education and essentially guaranteed her employment as a computer operator if she completed the curriculum offered by CLC.

---

**2.** Because the parties essentially rely on the pleadings, I will consider the motions to be solely for dismissal of the action, not for summary judgment.

Specifically, plaintiff alleges that CLC made false written and oral claims of a 90% or higher placement rate and made false oral claims that placement was guaranteed. She alleges that CLC manufactured newspaper and brochure advertisements in which former students gave false testimonials about the benefits they received from their attendance at CLC. Plaintiff asserts that CLC falsely claimed to have a recruitment relationship with, and to have placed many students at, a list of "many well-known businesses". Second Amended Complaint, ¶ 73(e). She contends that CLC falsely represented that it has an "Industry Advisory Board" that keeps it abreast of the latest employment trends. Plaintiff further alleges that CLC falsely represented the educational achievements of its executives and that CLC charged unconscionably high tuition rates for its courses. Finally, plaintiff asserts that despite perfect attendance at CLC, graduation with a "B" average, contact with the CLC placement office as directed by said office, and efforts on her own, she has been unable to find a job as a computer operator since her graduation from CLC.

Plaintiff financed her education at CLC with the proceeds of a loan under the Stafford Student Loan Program ("SSLP"), and a Federal Supplemental Loan("FSL"), which are governed by the provisions of the Higher Education Act, 20 U.S.C. § 1071, *et. seq.,* and the regulations of the Secretary, 34 C.F.R. § 682.100, *et. seq.* These two loans were made by defendant Chemical Bank and guaranteed by defendant NJHEAA.

Plaintiff alleges that CLC arranged for the financing of her education at CLC. Moreover, she asserts that CLC obtained all necessary financial papers and either completed or assisted her with all relevant paper work. Plaintiff also asserts that CLC chose the bank that provided the student loans.

With regard to Chemical, Citibank, NJHEAA, ASA, USAF, and ISAC, (collectively referred to as the "non-school defendants"), plaintiff alleges that they are liable for CLC's misconduct under the legal theo-

ries previously referred to. Plaintiff asserts that despite having actual notice of the high default rates of CLC students, and thereby having actual and/or constructive notice that the school was engaged in fraudulent or unconscionable practices, Chemical and Citibank continued to finance students' attendance at CLC. As for the defendant guaranty agencies, plaintiff claims that they too furthered CLC's fraudulent and unconscionable practices as they allegedly had notice of the high default rates, but continued, nonetheless, to guarantee the loans.

Plaintiff alleges that the financial defendants effectively delegated their normal student loan making functions to CLC. She asserts that: 1) CLC chose the bank from which each plaintiff would obtain financing; 2) CLC obtained all of the necessary financial papers[3]; 3) CLC either completed the papers or assisted plaintiffs in completing the papers; and 4) CLC verified all applicant information and identification and had applicants sign the proper documents.

### STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed for failure to state a claim if a defendant demonstrates "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3d Cir.1989); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). All allegations set forth in the Complaint must be accepted as true, *see Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), and all reasonable inferences must be drawn in the plaintiff's favor. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). On a 12(b)(6) motion, the district court is limited to the facts alleged in the Complaint, not those raised for the first time by counsel in its legal memorandum. *Hauptmann v. Wilentz,* 570 F.Supp. 351, 364 (D.N.J.1983), *aff'd without opinion,* 770 F.2d 1070 (3d Cir.1985),

---

**3.** Indeed, plaintiff asserts that virtually none of the students went to the banks personally to obtain and to fill out the necessary paper work.

cert. denied, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); Seevers v. Arkenberg, 726 F.Supp. 1159, 1165 (S.D.Ind.1989) ("This court is not at liberty, however, to consider allegations which do not appear in the Complaint, but which are averred only in legal briefs."). The Third Circuit, however, has held that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," without converting the motion into a motion for summary judgment, "if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

■ Moreover, a plaintiff generally should be allowed to amend its complaint to cure any pleading deficiencies. "Even after a responsive pleading has been filed ... great liberality in allowing amendment of an initial pleading is often appropriate, especially when amendment will further the ends of justice, effectuate presentation of a suit's merits and not prejudice the opposing party." Kiser v. General Electric Corp., 831 F.2d 423, 427 (3d Cir.1987), cert. denied sub nom, Parker–Hannifin Corp. v. Kiser, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988); see also Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir.1984). Generally, "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir.1985). Indeed, "it is not only within the power, but is a duty, of a federal court to consider on the merits a proposed amendment of a defective allegation once the court's attention is called to the defect." Kiser, 831 F.2d at 427. A "plaintiff should be granted every opportunity to cure defects in its pleadings by amendment, no matter

how unpromising its initial attempt." Sixth Camden Corp. v. Township of Evesham, 420 F.Supp. 709, 720 (D.N.J.1976). See also 5A C. Wright & A. Miller, Federal Practice & Procedure § 1357, at 361–65 (1990). This is so because "[c]ourts must be cautious in assessing motions to dismiss, particularly where granting such a motion would terminate the litigation before the parties have had their day in court." Kiser, 831 F.2d at 428.

## DISCUSSION

### A. THE FEDERAL FAMILY EDUCATION LOAN PROGRAM

Before examining the defendants' respective motions to dismiss, it is necessary to delineate the basic structure of the Federal Family Education Loan ("FFEL") Program in which plaintiff participated.[4] The FFEL Program is authorized under Title IV, Part B, of the Higher Education Act of 1965, as amended ("the HEA"), 20 U.S.C. §§ 1071–1087–2. Participating lending institutions, such as Defendant Chemical, use their own funds to make loans to qualified borrowers attending "eligible" postsecondary schools. These loans are guaranteed by state agencies, such as the NJHEAA, or non-profit organizations and are subsidized and reinsured by the United States Department of Education. 20 U.S.C. §§ 1078, 1087–1.

The objective of the student loan program is to encourage lenders to make funds available to students of limited means throughout the country to attend the eligible schools of their choice. Private lenders are encouraged to loan money to students, secondary markets to purchase these loans, and guarantee agencies to guarantee these loans. As a practical matter, students are not required to travel long distances to lenders such as Chemical and Citibank to engage in a face-to-face processing of a loan application. Such a

---

4. The FFEL Program is an umbrella term for four different guaranteed student loan programs: the Robert T. Stafford Federal Student Loan Program, 20 U.S.C. § 1071; the Federal Supplemental Loans for Students Program, 20 U.S.C. § 1078–1; the Federal PLUS Loan Program, 20 U.S.C. § 1078–2; and the Federal Consolidation Loan Program, 20 U.S.C. § 1078–3. Prior to 1992, Federal Family Education Loans were typically referred to as "Guaranteed Student Loans." For the purposes of this opinion, the terms "FFELP loans" and "GSLP loans" will be used interchangeably to describe the loans in issue.

requirement would seriously impair the effectiveness of the program. Instead the statute and regulations contemplate that the school which the student seeks to attend will be responsible for handling many of the details leading to the presentation of the loan application to the lender.

Lenders receive two types of federal subsidy payments on loans made to qualified borrowers. First, the Department of Education ("the Department") pays the holder of a qualifying loan the interest that accrues on the loan during specified periods. 20 U.S.C. § 1078(a). Second, the Department pays the holder, for the life of a qualifying loan, an additional subsidy, called a special allowance. 20 U.S.C. § 1087–1(b)(2). Pursuant to governing FFEL Program regulations, lenders must satisfy certain due diligence requirements with regard to the making, disbursing, servicing and collecting of student loans. *See* 34 C.F.R. §§ 682.206–208, 682.411. Loan-making duties, in particular, entail "processing the loan application and other required forms, approving the borrower for a loan, determining the loan amount, explaining to the borrower his or her rights and responsibilities under the loan, and completing and having the borrower sign the promissory note." 34 C.F.R. § 682.206(a).

If a borrower defaults in repaying her loan, her guaranty agency pays the holder of the loan pursuant to its guaranty commitment. The holder may be either the original lender or another eligible financial institution to whom the loan has been properly assigned. 34 C.F.R. § 682.401(b)(9). Pursuant to § 428(c) of the HEA, the Department may enter into reinsurance agreements with qualifying guaranty agencies to reimburse them between 80% and 100% of losses incurred in honoring default claims on qualifying loans. 20 U.S.C. § 1078(c). Guaranty agencies have a continuing obligation to pursue collection activities even after the Secretary pays reinsurance claims. 34 C.F.R. § 682.410(b)(6).

Federal benefits under the FFEL Program are available only on loans made to students attending "eligible institutions," as defined in 20 U.S.C. § 1085(a). Participating schools are required to perform a number of tasks before students attending such institutions may receive federally reinsured loans. As a preliminary matter, a school must provide a student with information regarding financial aid. 20 U.S.C. §§ 1092, 1094(a)(9); *see also* 34 C.F.R. § 668.41. For example, the school must describe and explain to the student the requisite procedures and forms for applying for federal financial assistance. 20 U.S.C. § 1092(a)(1)(A)-(C); *see also* 34 C.F.R. § 668.43(b). Moreover, the school must inform the student of her eligibility for financial aid. 20 U.S.C. §§ 1092, 1094(a)(9); 34 C.F.R. §§ 668.41, 668.43(b).

A school must perform certain administrative tasks necessary to process FFEL Program loan applications as well. These include completion of key parts of a borrower's loan application, such as those containing the amount of the loan recommended and the evaluation of the borrower's financial need. 20 U.S.C. §§ 1078(a)(2), 1092. The school must certify that the amount of the loan requested does not exceed the cost to the student of attending the school, in light of other resources available to the student, including a contribution from family resources and other financial aid. 20 U.S.C. §§ 1078(a)(2)(A), (F); 34 C.F.R. § 682.603.

A school's involvement continues after the lender decides to make a FFEL Program loan. If the borrower is a student, her lender must disburse the loan proceeds directly to the school. 20 U.S.C. § 1078(b)(1)(N); *see also* 34 C.F.R. § 682.207. The school is then required to process the proceeds. 34 C.F.R. § 682.604. Finally, the school is required to conduct exit counseling, to provide FFEL Program borrowers with information about their indebtedness, to review their repayment options and to suggest debt management strategies. 20 U.S.C. § 1092(b); 34 C.F.R. § 682.604.

Notwithstanding these numerous obligations of both lenders and schools, an individual lender and a school may enter into a special relationship whereby the school performs the duties of the lender. Such an alliance is commonly referred to as an "origination relationship". 34 C.F.R. § 682.200(b)(5). Specifically, this business relationship involves a lender delegating to a school, or to an entity or individual affiliated

with the school, "substantial functions or responsibilities normally performed by lenders before making FFEL program loans." *Id.* As will be discussed later in this opinion, a key consequence flows from the establishment of such a relationship.

### B. *FTC HOLDER RULE*

■ The Federal Trade Commission's ("FTC") "Preservation of Consumers' Claims and Defenses" rule, which is commonly referred to as the "Holder Rule", precludes a seller of goods or services under certain circumstances from accepting as payment a consumer credit contract unless it includes a clause by which claims and defenses against the seller are made available against the holder.[5] *See* 16 C.F.R. § 433.1, *et. seq.* Plaintiff asserts that her student loan contracts are void for failure to include the notice of claims and defenses required by the FTC Holder Rule. She contends that the non-inclusion of the FTC Notice in the student loan notes violated the New Jersey Consumer Fraud Act (NJCFA), *N.J.S.A.* § 56:8–2 *et. seq.*, and that the FTC Holder Rule should be implied into the notes under either Federal law or the NJCFA. Moreover, plaintiff asserts that the absence of the FTC Notice renders the student loan notes unconscionable and contracts of adhesion under New Jersey law.

Conversely, the non-school defendants assert that the language of the FTC Act, 15 U.S.C. § 41, *et. seq.*, and of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et. seq.*, make clear that, prior to 1994[6], the FTC Holder Rule was inapplicable to student loan transactions. First, the non-school defendants note that the regulatory language indicates that the FTC Holder Rule incorporates TILA, and Regulation Z, 12 C.F.R. § 226, *et. seq.* Second, they point out that "Congress expressly exempted student loans from the purview of TILA in 1982, *see* 15 U.S.C. § 1603(6) (1982), and the FTC expressly exempted student loans from Regulation Z soon thereafter." *Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1249 (D.D.C.1992) (*Jackson I*) (citing 12 C.F.R. § 226.3(f) (1983)). Hence, based on these statutory and regulatory amendments, the non-school defendants, like the defendants in *Jackson I,* contend that the FTC Holder Rule did not apply to student loans prior to 1994. Moreover, even assuming that the FTC Holder Rule did apply to student loan notes before 1994, the non-school defendants still maintain that plaintiff cannot obtain relief because the FTC Notice was omitted from the contracts at issue.

The FTC Holder Rule, as first promulgated in 1975, was clearly intended to apply to school loans. The FTC noted that loans pertaining to vocational schools, in particular, was an area where the rule was needed.[7] In its Statement of Basis and Purpose, the FTC declared that "[t]he rule expressly applies to credit contracts arising from sales of ser-

---

**5.** The Holder Rule provides: In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of the Act for a seller, directly or indirectly, to:

(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**6.** In a statement dated July 2, 1993, the Secretary stated that the language required by 16 C.F.R. § 433 should be in the promissory note for the FFEL student loan program, effective January 1, 1994. *Jackson v. Culinary School of Washington,* 27 F.3d, n. 23 at 587 (D.C.Cir.1994). This action was taken pursuant to a congressional directive to the Secretary to "prescribe a common application form and promissory note." 20 U.S.C. 1082(m)(1)(A).

**7.** Among the types of consumer goods or services involved in the case histories on the record are: courses of English language instruction, television and modeling school courses, computer schools, flying lessons, a karate school and other miscellaneous courses of training or instructions. *See* 40 Fed.Reg. 53510 (Nov. 18, 1975). (footnote omitted).

vices, such as trade or vocational school agreements...." *Federal Trade Commission, Preservation of Consumers' Claims and Defenses, Final Regulations, Proposed Amendment and Statement of Basis and Purpose,* 40 Fed.Reg. 53506, 53524 (1975). Furthermore, the staff guidelines stated that, "[s]ervices such as ... vocational training are covered." *Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses,* 41 Fed.Reg. 20022, 20024 (1976).

■ Although the 1982 amendments to TILA exempted student loans from the Act's coverage, neither the language nor legislative history of TILA or the FTC Holder Rule indicate that Congress or the FTC intended to include any and all subsequent amendments to TILA in the Holder Rule's definitional terms. *Jackson I,* 788 F.Supp. at 1250. As the court explained in *Jackson I:*

> In amending [TILA] in 1982, Congress did not purport to limit the FTC's ability to protect against consumer fraud. The legislative history of [TILA] suggests that student loans were removed from the coverage of that Act and also exempted from state law disclosure rules because the Higher Education Act already governed the lenders' disclosure obligations with respect to student loans. *See* S.Rep. No. 641, 97th Cong., 2d Sess. 91 (1982), U.S.Code Cong. & Admin. News 1982, pp. 3054, 3134. *Nothing in the legislative history of [TILA] indicates Congress made a determination that student loans, in toto, should be removed from the protection of consumer protection laws.*

*Id.* at 1250–51 (citing 40 Fed.Reg. 53,506 (Nov. 18, 1975)). (emphasis added). Moreover, the FTC's own rulemaking "does not

indicate that the FTC desired the definitional terms for the Holder Rule to change depending upon subsequent exemptions applied to [TILA]." *Id.* (citing 40 Fed.Reg. 53,506 (Nov. 18, 1975)). Hence, based on the standard rules of statutory construction, the definitional terms [8] in the FTC Holder Rule should be read without regard to the 1982 amendments to TILA. *Id.* Such an analysis makes manifest that the FTC Holder Rule has always applied to guaranteed student loans.[9]

The contention that the Holder Rule did not become applicable to student loans until 1994 is incorrect. The FTC, not the Department of Education, has the authority to adopt, modify, or interpret the FTC Holder Rule. The FTC has repeatedly stated that the Holder Rule as adopted in 1975 applies to student loans. In 1992, Congress transferred the responsibility for drafting loan forms from guarantor and lenders to the Secretary. In 1993, the Secretary, in response to this directive, required that the language incorporating the terms of the FTC Holder Rule be included in promissory notes evidencing student loans. Thus, the 1994 action of the Secretary did not have the effect of imposing a new requirement. Rather, it required that an existing requirement be complied with.

■ Notwithstanding the application of the FTC Holder Rule to plaintiff's student loan transactions, the non-school defendants assert that the omission of the FTC Notice from the student loan notes precludes plaintiff from obtaining relief under the rule. The movants essentially contend that the FTC Holder Rule can only be given effect if the lender actually includes the FTC Notice as an express term of the contract.[10] Further-

---

8. The regulations define a purchase money loan as "a cash advance is received by a consumer in return for a 'Finance Charge' within the meaning of TILA." 16 C.F.R. § 433.1(d). A financed sale is one in which there exists any extension of credit "in connection with a credit sale within the meaning of the Truth in Lending Act and Regulation Z." 16 C.F.R. § 433.1(e).

9. Although the Seventh Circuit Court of Appeals reached a different conclusion in *Veal v. First American Savings Bank,* 914 F.2d 909, 914 (7th Cir.1990), there is no discussion of statutory interpretation in the Opinion. Similarly, two addi-

tional cases that conclude that the FTC Holder Rule does not apply to student loans, *see Higher Education Assistance Foundation v. Merritt,* Civ. 91–1576 (Fla.Cir.Ct., Sept. 19, 1991); *Molina v. Crown Business Institute,* Civ. No. 24332/88 (N.Y.Sup.Ct., Sept. 10, 1990), merely cite *Veal* without any discussion of the statutory interpretaion issue. *Jackson I,* 788 F.Supp. at 1251, n. 15.

10. Movants rely heavily on *Vietnam Veterans of America, Inc. v. Guerdon Indus. Inc.,* 644 F.Supp. 951, 964–65 (D.Del.1986), and cases following this decision to support their argument that the

more, they assert that the Notice cannot be read into the contract where the lender omits the Notice even if the lender was aware or should have been aware that the loan is subject to the FTC Rule.

Notwithstanding the conclusion that the FTC Holder Rule was applicable to plaintiff's student loans, the parties agree that violation of the rule does not give rise to a federal private cause of action. Whether the absence of the § 433 notice in plaintiff's loan instruments gives rise to a state law claim raises issues of state law and preemption. These issues will be discussed in subsequent sections of this opinion.

### C. ORIGINATION

Plaintiff asserts that because CLC "originated" her student loans within the meaning of 34 C.F.R. 682.200(b), the lenders and assignees take the promissory notes subject to all the claims and defenses she has against the school. In response, the non-school defendants aver that no origination relationship existed because everything that was done by CLC was either mandated or permitted by the HEA. Furthermore, the non-school defendants argue that the alleged key consequence of an origination relationship, i.e. lender and assignee liability, has not been promulgated as a rule pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., but rather has only been contained in a series of pronouncements by the Secretary of Education. Hence, they maintain that they cannot be held liable as a matter of law.

"Origination" is defined by federal regulations governing the student loan program as:

A special relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally per-

formed by lenders before making loans. In this situation, the school is considered to have 'originated' a loan made by the lender.

The Secretary determines that 'origination' exists if, for example—

(1) a school determines who will receive a loan and the amount of the loan; or

(2) the lender has the school verify the identity of the borrower or complete forms normally completed by the lender.

34 C.F.R. § 682.200(b).[11]

Loan-making duties that may be delegated "include processing the loan-application and other required forms, approving the borrower for a loan, determining the loan amount, explaining to the borrower his or her rights and responsibilities under the loan, and completing and having the borrower sign the promissory note." 34 C.F.R. 682.206(a)(1).

In the instant case, plaintiff asserts that: (1) CLC chose the bank from which each plaintiff would obtain financing; (2) CLC obtained all of the necessary financial papers; (3) CLC either completed the papers or assisted plaintiff in completing the papers; (4) CLC verified all applicant information and identification; and (5) CLC had applicants sign the proper documents. Hence, according to plaintiff, she has sufficiently alleged the existence of an origination relationship to withstand the motions to dismiss.

■ If a lender elects to delegate its loan-making duties to a school it thereby establishes an origination relationship. The question arises whether the lender or assignee can be subject to school-related defenses. 34 C.F.R. 682.206(a)(2) provides that if an origination relationship exists, a "lender may rely in good faith upon statements of the borrower contained in the loan application, but may not rely upon statements made by the school in the application." Id. Where a non-school lender does not have an origination relation-

FTC Notice can only be given effect if it is included as an express term. *Vietnam Veterans* is inapposite, however, because the holders or the loans in that case claimed rights as holders in due course. Student loans, on the other hand, are not negotiable instruments and assignees of the loan cannot claim rights as holders in due course. *See Jackson I,* 788 F.Supp. at 1248, n. 9

(D.D.C.1992), *rev'd on other grounds,* 27 F.3d 573 (D.C.Cir.1994).

11. The above quoted definition was in effect from 1979 through January 1993. The regulation was changed slightly by deleting specific examples in December of 1992. 57 Fed.Reg. 60,304 (Dec. 18, 1992).

ship with a school, it "may rely in good faith upon statements of both the borrower and the school that are contained in the loan application." *Id.*

The non-school defendants argue that § 682.206(a)(2) sets forth the only consequence of an origination relationship. However, an additional consequence is embodied in 34 C.F.R. 682.604(f)(2)(iii), which suggests that borrowers may raise school-related defenses against lenders and assignees regarding the repayment of their loans. The Department of Education first promulgated this regulation in 1986. 34 C.F.R. 682.604(f)(2)(iii) was then amended in 1989 to clarify the key consequence of an origination relationship with a participating school, i.e. lender and assignee liability, on the GSLP loan process. The regulation states that:

> [A] school shall conduct [initial] counseling with each Stafford borrower . . . prior to its release of the first disbursement of the proceeds
>
> (2) In conducting the initial counseling, the school must—
>
> (i) . . .
>
> (ii) . . .
>
> (iii) In the case of a borrower of a Stafford or SLS loan (*other than a loan made or originated by the school*), emphasize that the borrower is obligated to repay the full amount of the loan even if the borrower does not complete the program, is unable to obtain employment upon completion, or is otherwise dissatisfied with or does not receive the educational or other services that the borrower purchased from the school.

*Id.* (emphasis added). The clear implication of this language is that when a loan is made or originated by a school, a borrower is not obligated to repay the loan if the school fails to fulfill its contractual obligations.

In the case of *Tipton v. Secretary of Education,* 768 F.Supp. 540 (S.D.W.Va.1991), the court dealt with the issue of whether there was any statutory or regulatory basis for concluding that lenders were put on adequate notice as to the consequences of having an origination relationship with a participating school. *Id.* at 569. The court held that

regulations, such as 34 C.F.R. 682.206(a)(2) and 682.604(f)(2)(iii), provided a basis for holding lenders and guaranty agencies subject to school-related defenses, so long as the loans at issue did not predate the regulations. *Id.* at 567–69, n. 49; *see also Hernandez v. Alexander,* CV–S–91–705–PMP (D.Nev. May 19, 1992), at 31–32. In the instant case, plaintiff entered into her student loan agreement in 1990, and the other members of the class entered into their student loan agreements between 1988 and 1996. Thus, with respect to 34 C.F.R. 682.206(a)(2), which was published in 1986, all the loans at issue in this case had been transacted long after the lenders and guaranty agencies had been made aware of the impact of an origination relationship on the GSLP process. Likewise, with respect to 34 C.F.R. 682.604(f)(2)(iii), which was initially promulgated in 1986 and then amended in 1989 to include GSLP loans, plaintiff's loans and the loans of numerous other members of the class had been transacted after the regulation had been published.

■ Notwithstanding these facts, the non-school defendants maintain that they cannot be held liable as lenders and guaranty agencies because the consequences of an origination relationship were not properly published as required by the APA. 5 U.S.C. § 552. The non-school defendants rely on a number of cases for their position. *See Jackson v. Culinary School of Washington,* 27 F.3d 573 (D.C.Cir.1994); *Veal v. First American Savings Bank,* 914 F.2d 909 (7th Cir.1990); *Armstrong v. Accrediting Council,* 832 F.Supp. 419 (D.D.C.1993), vacated, 84 F.3d 1452 (D.C.Cir.1996); *Williams v. National School of Health Technology,* 836 F.Supp. 273 (E.D.Pa.1993); *Bartels v. Alabama Commercial College,* 918 F.Supp. 1565 (S.D.Ga. 1995), (relies on *Armstrong* and *Williams* ). I conclude that 682.604(f)(2)(iii) satisfies the APA's publication requirements.

With respect to 34 C.F.R. 682.604(f)(2)(iii), the non-school defendants rely almost entirely on the district court's decision in *Jackson I* for their view that the regulation does not provide a basis for holding lenders and assignees subject to school-related defenses. In *Jackson I,* the court reasoned that section

682.604(f)(2)(iii) "speaks only in the most indirect terms about the impact of an origination relationship." *Id.* at 1261. The court found that "the provision does not define the school's counseling responsibilities with respect to loans originated by the school," nor does it "address the availability of state-based defenses for matters unrelated to the quality of the educational services provided by the schools." *Id.* at 1262. Hence, the *Jackson I* court concluded that 34 C.F.R. 682.604(f)(2)(iii) does not enable the student to employ school-related defenses against the lender.

The reasoning of the district court in *Jackson I* is unpersuasive for two key reasons. First, section 682.604(f)(2)(iii) does, in fact, address the availability of defenses pertaining to matters other than the quality of the education. The regulation expressly speaks of the inability to obtain employment, not receiving "other services that the borrower purchased from the school," such as placement services, and being "otherwise dissatisfied." 34 C.F.R. § 682.604(f)(2)(iii).

Second and most important, the regulation complies with the requisites necessary to enforce it as law. In *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the United States Supreme Court ruled that, in order for an APA regulation to have the "force and effect of law," it must meet three basic requirements. *Id.* at 301, 99 S.Ct. at 1717. First, the regulation must be a "substantive rule." *Id.* at 301–03, 99 S.Ct. at 1717–18. That is to say, the regulation must be a "legislative-type rule" which affects "individual rights and obligations." *Id.* at 302, 99 S.Ct. at 1718. Second, Congress must have granted the agency authority to create such a regulation. *Id.* at 301–03, 99 S.Ct. at 1717–18. Third, the regulation must be promulgated in accordance with any procedural requirements imposed by Congress. *Id.*

In the instant case, 34 C.F.R. § 682.604(f)(2)(iii) unquestionably satisfies the *Chrysler* publication requirements. The regulation is a "substantive rule" because it enunciates the right of a borrower to assert school-based defenses when a loan is originated by a school. The regulation provides that students should be counseled that they cannot raise school-related defenses on a loan, "other than a loan made or originated by the school." 34 C.F.R. § 682.604(f)(2)(iii).

Section 682.604(f)(2)(iii) satisfies the second *Chrysler* requirement because the regulation was promulgated pursuant to the Secretary of Education's authority. In describing the general powers of the Secretary, the HEA states that:

> In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may—
>
> (1) *prescribe such regulations as may be necessary to carry out the purposes of this part, including regulations applicable to third party servicers* . . . to establish minimum standards with respect to sound management and accountability of programs under this part, except that in no case shall damages be assessed against the United States for the actions or inactions of such servicers.

20 U.S.C.A. § 1082. (emphasis added). Thus, the Secretary had the authority to create 34 C.F.R. § 682.604(f)(2)(iii) as a means of protecting student borrowers.

Section 682.604(f)(2)(iii) meets the final *Chrysler* requirement necessary for imparting the regulation with the "force and effect of the law" because it was promulgated in accordance with the procedural requirements imposed by Congress. Section 553 of the APA states that notice of a proposed substantive rule should be published in the Federal Register at least 30 days before its effective date so that interested persons may participate in the rule making process.[12] 5

---

**12.** (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.

The notice shall include—
(1) a statement of the time, place, and nature of public rule making proceedings;
(2) reference to the legal authority under which the rule is proposed; and

U.S.C.A. § 553(b)–(d). 34 C.F.R. 682.604(f)(2)(iii) was published in the Federal Register on June 5, 1989 and became effective more then two months later on August 24, 1989. *See* 54 Fed.Reg. 24113, 24114, 24120, 35188–89. Hence, the regulation was properly published and the lenders and guaranty agencies were afforded an opportunity to raise their concerns and questions regarding the regulation.

In short, 34 C.F.R. § 682.604(f)(2)(iii) satisfies the APA's publication requirements and provides a legally enforceable basis for asserting school-related defenses. *Accord Tipton*, 768 F.Supp. at 567–69; *Hernandez*, CV–S–91–705–PMP at 31–2. As a result, the allegations of the Complaint are sufficient to support a finding that the student loan notes executed in this case [13] after August 1989 are subject to plaintiff's school-related defenses.

■ With regards to 34 C.F.R. § 682.206(a), the non-school defendants argue that the plain language of the regulation does not enable the student to assert school-related defenses against the lender or assignees. They contend that section 682.206(a)(2) merely imposes additional due diligence responsibilities upon lenders involved in an origination relationship. *See e.g., Jackson I*, 788 F.Supp. at 1261; *Williams*, 836 F.Supp. at 283.

Subsection (a)(1) of § 682.206 defines loan-making duties. The first sentence of subsection (a)(2) of § 682.206 states that a lender that delegates substantial loan making activities to a school on a loan thereby enters into a loan origination relationship with the school in regard to that loan. It is true that one consequence of such a relationship is the imposition of additional due diligence responsibilities upon lenders as set forth in the second and third sentences of subsection (a)(2). There is no reason why additional consequences cannot be imposed by other parts of the regulations such as 682.604(f)(2)(iii).

The Secretary has made repeated statements buttressing the position that an origination relationship subjects lenders and guarantors to school-related defenses. For example, in a May 19, 1988 letter from Kenneth D. Whitehead, the Acting Assistant Secretary of Education, to Stephen J. Solarz, House of Representatives, the Assistant Secretary stated the following:

> If a loan is not legally enforceable, it is not reinsurable by the Department, and the Department would not encourage or require a lender or guaranty agency to attempt to collect such a loan. As a legal matter, however, a student who borrows under the GSL program from a third party lender remains responsible for repaying the loan even if the school closes, *unless a relationship exists between the lender and school that would make the school's failure to render educational services a defense to repayment of the loans to the lender.* This kind of relationship can arise when the lender makes the school its agent for certain functions in the loan making process. The Department has termed such an agency relationship an "origination relationship." 34 C.F.R. § 682. 200.

*Tipton*, 768 F.Supp. at 555–56. (emphasis added). In view of the Supreme Court's holding in *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), that where an agency has issued an interpretation of the regulations it is charged with enforcing, courts should grant

---

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

. . . . .

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date . . .
5 U.S.C.A. § 553(b)-(d).

**13.** It should be noted that in a subsequent opinion and after depositions had been taken, the *Hernandez* court found that as a factual matter the plaintiffs could not show an origination relationship. *Hernandez v. Alexander*, 845 F.Supp. 1417 (D.Nev.1993).

great deference to that interpretation. *Id.* at 380–81, 89 S.Ct. at 1801–02.

## D. *STATE LAW CLAIMS and DEFENSES*

Plaintiff asserts that the non-school defendants are subject to a number of New Jersey defenses and affirmative claims which she can assert against the CLC defendants by virtue of the relationship which the lender and guarantor defendants had with CLC.

First, plaintiff asserts that use of promissory notes that do not contain the FTC Holder Notice is: 1) a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1, *et seq.,* 2) results in inserting the Holder Notice as an implied term pursuant to New Jersey common law, and 3) results in an unconscionable contract of adhesion pursuant to New Jersey consumer law.

N.J.S.A. 56:8–2 provides:

56:8–2, Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator ...

"Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8–1.

A victim of a prohibited practice "may bring an action or assert a counterclaim

therefor ..." and may recover treble damages and attorneys' fees. N.J.S.A. 56:8–19.

Second, plaintiff contends that under the state law of agency the banks delegated their named loan function to CLC and thus are liable for the torts committed by CLC and its principals.

Third, plaintiff contends that under New Jersey's common law "closely connected" doctrine the lenders and guarantors are liable to plaintiff for CLC's misdeeds.

It must first be determined whether, as certain of the non-school defendants contend, New Jersey law is totally preempted and, if not, whether it is preempted in part. Before addressing the applicable legal principles certain aspects of the student loan program must be reiterated. The purpose of the program is to provide an extensive base of loans for lower income students so that they can pursue their education. To accomplish this the statute and regulation seek to encourage lending institutions and guarantor agencies to make funds readily available to prospective students. For the most part the lenders and guarantor agencies are far removed from the schools and the students. For this reason the regulations impose upon the schools responsibilities which would normally be that of a lender, and they permit lenders to rely on the schools to perform these functions.

In earlier sections of this opinion there is a discussion of the consequences of "origination," i.e., the delegation of certain lender functions to schools. There is nothing illegal or wrongful about such delegation; in fact, if the program is to be fully effective it is necessary that such delegation of responsibility take place. As previously ruled, the consequence of origination is to make the lender subject to defenses which the student borrower would have against the school. This is equivalent to the lender's status under the Holder Rule: "Any holder of this consumer credit contract is subject to all claims and defenses which the [student] could assert against the [school]. Recovery hereunder by the [student] shall not exceed amounts paid by the [student]."

What plaintiff seeks, however, is much more. She relies on N.J.S.A. 58:8–19 to re-

cover against the lender and guarantor agencies other than NJHEAA treble damages and attorney's fees (Counts One, Three, Four, and Six). She relies on agency and close connection common law principles to recover actual damages against the lenders and guarantor agencies other than NJHEAA (Counts Two and Five). It is readily apparent that plaintiff seeks to impose very heavy liability upon the lender and guarantor defendants on the basis of conduct which the student loan statute and regulations either permit or require and as to which regulations already impose legal consequences, for example, the consequences of an origination relationship.

■ Congress has the undoubted power to preempt state law. When determining whether a state statute or principle of common law is preempted by federal law and thereby rendered unenforceable under the Supremacy Clause, a court must ascertain the intent of Congress. *California Federal Savings & Loan v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). There are several different ways in which state law may be preempted:

> First, when acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms. Second, Congressional intent to preempt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation ... As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless preempt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*California Federal Savings & Loan,* 479 U.S. at 280–81, 107 S.Ct. at 689.

■ There is an absence of express preemption in the enactment of HEA. The non-school defendants assert, however, that Congress intended that the HEA preempt all of the plaintiff's state law claims and defenses. More specifically, they contend that the statutory provisions of the HEA as to when a loan should be discharged, (i.e., 20 U.S.C. § 1087(a),(b)), preempt any state law basis for nonpayment of a GSLP loan. 20 U.S.C. § 1087(a) provides that "[i]f a student borrower who has received a loan ... dies or becomes permanently and totally disabled ..., then the Secretary shall discharge the loan by repaying the amount owed on the loan." Subsection (b) of 20 U.S.C. § 1087 similarly provides that "[t]he Secretary shall pay to the holder of a loan ... the amount of the unpaid balance of principal and interest owed on such loan ..." when the borrower files for bankruptcy. Hence, the non-school defendants argue that these provisions illustrate that Congress meant for there to be no other bases for the discharge of a student loan.

In addition to the discharge provisions enumerated under 20 U.S.C. § 1087(a), (b), certain non-school defendants argue that the civil penalty provisions delineated under the HEA demonstrate that Congress did not intend that plaintiff resort to state law. Defendants USAF and ISAC note that Congress has instituted an administrative policing mechanism whereby the Secretary, *inter alia,* is authorized "to impose and enforce limitations, suspensions, and terminations of guaranty agencies, 20 U.S.C. § 1082(h)(3), *see also* 34 C.F.R. § 682.413, and to impose a suspension, termination or civil penalty upon an eligible institution who [sic] 'has engaged in substantial misrepresentations of the nature of its educational program, its financial charges, or the employability of its graduates.'" 20 U.S.C. § 1094(c)(2)(A), (B). USAF & ISAC, Memorandum in Support of Motion to Dismiss, at 24. According to USAF and ISAC, these provisions indicate that Congress intended for administrative sanctions to be the exclusive means by which lenders and guaranty agencies could be held liable for failing to comply with their obligations under the HEA. Consequently, they argue that state law defenses are not available to student borrowers.

The contention of the non-school defendants that the HEA impliedly preempts all state law is without merit. A fair reading of the HEA demonstrates that Congress did not mean to prevent students from proceeding under provisions of state law which would not conflict with the purposes or provisions of the HEA or the regulations implementing the statute. 20 U.S.C. § 1077(a)(2)(A), for example, provides that the Secretary will insure a loan only if it is evidenced by a note or other written agreement which "is made without security and without endorsement, except that if the borrower is a minor and such note or other written agreement executed by the borrower would not, *under the applicable law,* create a binding obligation, endorsement may be required." *Id.* (emphasis added). The clear import of this language is that state law plays a central role in terms of its application to the underlying enforceability of loan obligations under the GSLP. *See Jackson I,* 788 F.Supp. at 1244; *Tipton,* 768 F.Supp. at 554.

The determination that the HEA neither explicitly nor implicitly preempts all state law is one that has been reached by the vast majority of courts that have addressed the issue. *See, e.g., Williams v. National School of Health Technology, Inc.,* 836 F.Supp. 273 (E.D.Pa.1993); *Keams v. Tempe Technical Institute, Inc.,* 807 F.Supp. 569, 573–78 (D.Ariz.1992), *reversed on other grounds,* 39 F.3d 222 (9th Cir.1994); *Tipton v. Secretary of Education,* 768 F.Supp. 540 (S.D.W.Va. 1991); *Jackson I,* 788 F.Supp. 1233 (D.D.C. 1992). In a lengthy exegesis, the *Tipton* court flatly rejected the notion that the HEA precludes all state law defenses to repayment of student loans. The court stated:

> The HEA simply does not attempt to itemize or limit borrower defenses on GSLP loans; to the contrary, the seminal requirement that the loan agreement be an "enforceable obligation under applicable law," implicitly disavows any congressional attempt to "leave no room for State regulation." Therefore, neither the adoption of three specific discharge provisions in § 477

nor the administrative sanctions listed later by the district court demonstrate the kind of comprehensive regulation of borrower's rights and remedies on GSLP loans as to "occupy the field" and leave "no room for supplementary State regulation."

*Tipton,* 768 F.Supp. at 553 (quoting from oral argument of the Secretary of Education in *Veal v. First American Savings Bank,* 914 F.2d 909 (7th Cir.1990)). Similarly, the courts in the *Jackson I* and *Veal* cases reasoned that the HEA is not such a statute that wholly preempts state law defenses. *Williams,* 836 F.Supp. at 281. The *Jackson I* Court declared that "Congress delineated which state contract laws would be preempted [14] and, by implication, suggested that the remaining contract defenses would lie." *Id.* at 1245. In *Veal,* the Seventh Circuit Court of Appeals noted that if sued by a Lender in state court for collection of [a student loan], each [plaintiff student] would be entitled to assert any defenses under state law that are applicable to his or her particular loan. *Veal,* 914 F.2d at 915, n. 7. Hence, the contention of the moving defendants that the HEA preempts all of the plaintiff's state law claims is meritless and must be rejected.

■ Although the HEA does not preempt all state and local law, it does, pursuant to the Supremacy Clause, preempt any state law which conflicts with it. State law has, in fact, always been preempted to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 65, 61 S.Ct. 399, 403, 85 L.Ed. 581 (1941). Two categories of state law are at issue in this case: 1) laws which plaintiff claims give her a cause of action against lenders and guarantors based upon the misrepresentation of the school defendants, and 2) laws which plaintiff asserts provide a defense to the actions against her to collect on the unpaid amount of the loans. It must be determined if these state laws are preempted in whole or in part.

---

14. *See, e.g.,* 20 U.S.C. § 1099 (1982) (loans shall not be subject to state law disclosure requirements); 20 U.S.C. § 1078(d) (any other state and federal usury law does not apply); 20 U.S.C.

§ 1091a(a) (1986) (state statutes of limitations do not apply); 20 U.S.C. § 1091a(b) (1986) (student may not raise infancy claims).

■ Plaintiff seeks actual damages, treble damages, and attorneys' fees against the lenders and the guarantor agencies relying factually on the failure to include the provisions specified in the FTC Holder Rule in the loan instruments, and relying on the relationship between the lenders and CLC. As a legal basis plaintiff relies on New Jersey's Consumer Fraud Act, N.J.S.A. 56:8–1, *et seq.*, and upon the common law doctrines of agency and close connections. *Westfield Investment Co. v. Fellers,* 74 N.J.Super. 575, 181 A.2d 809 (1962). These claims are advanced in face of the fact that the effect of the Holder Rule is simply to make a lender subject to a purchaser's claims and defenses against a seller in an amount not to exceed the amount paid by the purchaser. These claims are also made in face of the fact that the lender-CLC relationship upon which the agency and close connection claims are based were expressly permitted or mandated by the applicable regulations and as a practical matter were required if the purposes of the student loan program were to be fully realized.

In these circumstances the HEA impliedly preempts N.J.S.A. 56:8–1, *et seq.*, and New Jersey's law of agency and close connections to the extent they would hold the lenders and guarantor agencies liable for the alleged school misrepresentation. To apply these laws in these circumstances would totally frustrate the purpose of HEA to encourage lenders and guarantors to make funds readily available to large numbers of low income students. The regulations permit these relationships. The Holder Rule, itself, the Secretary's post 1993 requirement of use of notice containing Holder Rule provisions, and the regulatory provisions specifying the consequences of an origination relationship establish the consequences of lender-school relationships. To allow states to impose greater liability would frustrate the purposes and objectives of the HEA. Plaintiff's affirmative claims based on state law are, therefore, preempted. *Bartels v. Alabama Commercial College,* 918 F.Supp. at 1571; *Tipton v. Secretary of Education,* 768 F.Supp. at 558; *Bogart v. Nebraska Student Loan Program,* 313 Ark. 656, 858 S.W.2d 78 (1993).

■ The express language of the HEA, and the regulations promulgated thereunder, do not "create a private cause of action, and there is nothing in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied." *L'ggrke v. Benkula,* 966 F.2d 1346, 1348 (10th Cir.1992); *accord Labickas v. Arkansas State University,* 78 F.3d 333, 334 (8th Cir.1996); *Veal v. First American Savings Bank,* 914 F.2d 909 (7th Cir. 1990); *Williams,* 836 F.Supp. at 278–80; *Jackson I,* 788 F.Supp. at 1256–59. To allow affirmative damage suits based on state law would, therefore, undoubtedly conflict with the federal objectives of the HEA. Such actions would, for example, seriously frustrate Congress' goal of increasing loan availability by making the GSLP more attractive to commercial lenders.

■ Somewhat different considerations relate to plaintiff's reliance upon New Jersey's fraud and deceit law as a defense to efforts to collect the unpaid loan amount. The regulations and actions of the Secretary demonstrate that this limited burden imposed upon the lenders and guarantors by reason of fraud committed by a school would not frustrate the purpose of the student loan program. This is the post 1993 consequence of the Secretary's requirement that loan instruments include the FTC Holder Rule provision. If my application of the origination provisions is correct federal law already provides such a defense. In that situation state law defenses would be permissible if equivalent to, but no more extensive than, existing federal defenses. If by chance I have erroneously applied the origination provisions to give a borrower a defense to collection, state law providing the same defense would nevertheless not be preempted. The Secretary's actions with respect to the Holder Rule demonstrate that this defense would not be subversive of the purposes of the student loan program. Therefore, plaintiff is entitled to assert it, if permitted by state law, but the defense can have no greater effect than would pertain under the FTC Holder Rule.

### E. *Other Issues*

The plaintiff alleges that she can assert her school-based defenses against the non-

school defendants because the notes evidencing the guaranteed student loans are not negotiable instruments. Second Amend. Compl., ¶¶ 54(d), 96(c) and 103(c). The non-school defendants do not dispute that FFELP loan instruments are not negotiable. Nonetheless, they move to dismiss this alleged basis of liability on the ground that it misconstrues the law of assignment.

■ Under New Jersey common law of assignment, an assignee of a non-negotiable instrument takes "what the assignor had, subject to all set-offs, discounts and defenses which the debtor has, not only against the assignee but also against the assignor before notice of the assignment ..." *H. John Homan Co. v. Wilkes–Barre Iron and Wire Works*, 233 N.J.Super. 91, 558 A.2d 42, 44 (App.Div.1989). Thus, the debtor-obligor may avoid payment to the assignee by asserting claims and defenses available against the assignor. *Id.*

■ It follows in this case that the plaintiff cannot rely on the common law of assignment to raise her fraud claims against CLC as a defense to her loan repayment obligation to the non-school defendants, since CLC was never a holder of the plaintiff's notes. *Accord Veal*, 914 F.2d at 914. Plaintiff's notes are, however, subject to the defenses she has against Chemical. As assignees, the NJHEAA and the Secretary step into the shoes of Chemical from which they have taken the promissory notes and are subject to any defenses that plaintiff may assert against Chemical. *See Jackson I*, 788 F.Supp. at 1248.

■ Plaintiff asserts that the non-school defendants are also liable pursuant to N.J.A.C. 9:9–2.1 and 9:9–3.1. Second Amend. Comp., at ¶ 54(c) These regulations, which are entitled "Student Loans: Procedures and Policies," were promulgated in order to implement the New Jersey Higher Education Assistance Authority Law, N.J.S.A. 18A:72–1 *et seq.* (the "HEAAL"). N.J.A.C. 9:9–2.1 and 9:9–3.1 incorporate by reference 34 C.F.R. § 682.513,[15] which in turn provides that payments to a lender on a default claim should

be reduced by any amount attributable to the borrower's defenses. Some non-school defendants, namely Chemical, ISAC, and USAF, argue that plaintiff fails to assert a defense against them under these regulations because they are applicable exclusively to NJHEAA. Because this is an accurate statement of the law, the N.J.A.C. 9:9–2.1 and 9:9–3.1 defenses set forth at ¶ 54(c) of the Second Amended Complaint are dismissed as against all the defendants except the NJHEAA.

NJHEAA was created by the State of New Jersey to be the official guaranty agency of the state pursuant to the HEAAL. *See* N.J.S.A. 18A:72–3. As such, the NJHEAA is the official instrumentality of the State of New Jersey authorized to, *inter alia*, make loans, adopt rules for the guarantee of loans and to buy and sell notes evidencing loans. *See* N.J.S.A. 18A:72–10.

The NJHEAA is defined as the "Authority" by N.J.S.A. 18A:72–2. All provisions of the HEAAL and Chapter 9 refer to the obligations and responsibilities of the "Authority" and not to those of other lenders or guaranty agencies, such as Chemical, USAF, or ISAC. Hence, pursuant to standard statutory construction, the provisions cited by plaintiff are applicable only to the NJHEAA, and plaintiff's N.J.A.C. 9:9–2.1 and 9:9–3.1 defenses must be dismissed as against all other non-school defendants.

ASA moved to dismiss the Complaint against it on the ground that plaintiff lacks standing to assert claims against it. It is ASA's contention that because plaintiff's two student loans were obtained from Chemical and guaranteed by NJHEAA she does not have standing to assert a claim against ASA either on her own behalf or on behalf of the class.

Issues of standing are closely related to issues relating to the class action status of this case. The state court certified the class only "conditionally," deciding "to grant class action and allow discovery to the defendants to find support for reducing the class, while at the same time allowing the plaintiff to

---

**15.** Plaintiffs alleges in her Complaint that the regulations also incorporate 34 C.F.R. 682.517(c)(2), but no such provision exists. *See* Second Amend. Comp., at ¶ 54(c).

pursue discovery to maintain the class size, or to pursue the class action in general, or to further pursue support for causes of action that are asserted." Transcript of December 6, 1995 hearing, at 35.

Thus, major issues relating to the class action status of the case remain. Standing issues will be addressed at the time class action issues are finally resolved.

Plaintiff also alleges that the lenders and guarantor agencies other than NJHEAA defrauded plaintiff and the class members directly and thus are liable on account of their fraudulent acts in addition to being liable for the school defendants' fraudulent acts.

 Plaintiff's principal contention relying on the remoteness of Chemical from the student borrowers is inconsistent with a charge that Chemical made knowingly false representations to plaintiff intending that she rely upon them. The Complaint does not allege any fraudulent act on the part of Chemical or any other lender or guarantor agency. The sole basis for the fraud claim is that the non-school defendants were aware that there was a high default rate on CLC loans and nevertheless continued to process loans.

This is a totally inadequate basis for a fraud claim and does not meet the minimal requirements of Fed.R.Civ.P. 9(b). This is particularly true in the present circumstances where responsibility for evaluating schools rested totally with the Secretary and where the Secretary to this day has determined that CLC is eligible to participate in the student loan program. The claims based on the lenders' and guarantors' fraud must be dismissed.

### CONCLUSION

The claims against the Secretary set forth in the Complaint have previously been dismissed.

The following claims against the lender banks and against the guarantor agencies will be dismissed: 1) the federal law claim based on non-compliance with the FTC Holder Rule, 2) state law claims asserting that the lender banks and guarantor agencies are liable for the alleged misrepresentations of CLC and its principals, including claims based on N.J.S.A. 56:8–1, *et seq.*, and on agency and "closely connected" principles, 3) except as to NJHEAA state law claims based on N.J.A.C. 9:9–2.1 and 9:9–3.1, and 4) claims that the lender banks and guarantor agencies defrauded plaintiff.

The motions of the lenders and guarantor agencies are denied to the extent that they seek to preclude plaintiff from raising as a defense to collection of her notes fraud committed by CLC and its principals, provided that the scope of the defense shall not exceed the scope of the defense embodied in the FTC Holder Rule. An order encompassing these rulings will be filed with this opinion.